Filed 28 MAY 20__ PM 1:05
USBC WAWD TACOMA

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS  Bryan Anderson | DEFENDANTS  David John Denys |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Pro Se--No Attorney at this time | ATTORNEYS (If Known)<br>Ellen Ann Brown<br>Brown & Seelye PLLC<br>744 S. Fawcett, Tacoma, WA 98402 |
|---|---|

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee | ☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Debtor-Defendant obtained a rental home under false pretexts
and caused willful and malicious damage to the premises.
The debt is nondischargeable.  11 USC 523(a)(2)(A) and (a) (6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 4000.31 |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>David John Denys | BANKRUPTCY CASE NO.<br>19-40569-BDL | |
| DISTRICT IN WHICH CASE IS PENDING<br>Western District of Washington | DIVISION OFFICE<br>Tacoma | NAME OF JUDGE<br>Hon. Brian Lynch |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*Bryan Anderson*

| DATE<br><br>05/24/2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Bryan Anderson |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1 Bryan Anderson, pro se
20022 81st Avenue E.
2 Spanaway, WA 98387
3 (253) 590-3301
bryanlasbry@aol.com
4 Creditor

HON. BRIAN D. LYNCH

5

6

7

8       UNITED STATES BANKRUPTCY COURT
9       WESTERN DISTRICT OF WASHINGTON
              AT TACOMA
10

11 In Re:                          Case No. 19-40569-BDL

12 DAVID JOHN DENYS,                Chapter 7

            Debtor.
13

14 BRYAN ANDERSON,                  Adv. Proc. No.

     Plaintiff–Creditor,
15
   v.                               COMPLAINT TO DETERMINE
16                                  DISCHARGABILITY OF DEBT
   DAVID JOHN DENYS,
17
     Defendant–Debtor.

18
19          Comes now the Plaintiff, Bryan Anderson, and would respectfully show the Court as
20 follows:

21                            I. PRELIMINARY STATEMENT

22      1. This adversary proceeding asks whether a debtor may knowingly lie to a prospective

23 landlord about owning pets and being a smoker in order to rent a residence, be evicted in

24 less than six months due to keeping pets on the no-pets property, inflict a tremendous

25 amount of willful and malicious damage to the property, cause damage to the property by

26 virtue of his smoking and owning pets, and discharge the resulting debt.

27

28 //

COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT
(Ch. 7 No. 19-40569-BDL) (Adv. Proc. No. _____) Page 1 of 11

## II. PARTIES

2. Plaintiff-Creditor, Bryan Anderson ("Anderson"), is a resident of Pierce County, Washington.

3. Defendant-Debtor, David John Denys ("Denys"), is a resident of Mason County, Washington. He has petitioned this Court for a discharge of debts under Chapter 7 of the Bankruptcy Code.

4. Anderson is a judgment creditor of Denys.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a)–(c), 28 U.SC. § 1334(b), 11 USC § 523(a)(2)(A), and 11 USC § 523(a)(6).

6. Venue is proper under 28 U.S.C. § 1408 and LBR 1072-1.

7. The instant adversary proceeding to determine the dischargeability of debts is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

8. Anderson consents to the entry of final orders or judgment by the Bankruptcy Court. See FED. R. BANKR. P. 7008(a).

## IV. FACTS

9. In June 2014, Anderson advertised the property at 1784 Southeast Jones Road, Shelton, Washington, 98584 (the "Jones Road Property"), for rent as a residence.

10. The Jones Road Property was advertised as a no-smoking, no-pets property.

11. Denys and his now-former wife, Jessica Denys (together, "The Denys"), responded to the advertisement of the Jones Road Property.

12. On June 17, 2014, Anderson met The Denys at the Jones Road Property.

13. On that day, Anderson and The Denys walked through the entire residence, and toured the grounds of the Jones Road Property.

14. During this tour, Anderson explained the terms of tenancy of the Jones Road Property, including that it was a no-smoking, no-pets property. The Denys said they had no pets, and were not smokers.

15. After the tour, The Denys expressed their desire to rent the Jones Road Property, and each filled out a written rental application.

16. On their written rental applications, Denys and Jessica Denys each affirmed that they had no pets, and were not smokers.

17. A true and correct copy of the written rental applications filled out by The Denys is attached hereto and fully incorporated herein as Exhibit "1."

18. Based upon the contents of The Denys written rental applications, including their representations that they had no pets, and were not smokers, Anderson agreed to rent the Jones Road Property to The Denys.

19. On June 29, 2014, Anderson and The Denys met again at the Jones Road Property to sign a written rental agreement and complete the rental of the Jones Road Property to The Denys.

20. During this meeting, Anderson and The Denys reviewed the written rental agreement, section by section, including the sections pertaining to no smoking and no pets.

21. The Denys did not have any comments about the written rental agreement, nor did they suggest any changes to it.

22. Also at this meeting, Anderson and The Denys walked the interior of the Jones Road Property for the purpose of completing a landlord-tenant condition checklist of the property.

23. On this day, the interior of the Jones Road Property was clean, in good condition, and there were no odors of any kind, nor was there any garbage on the property.

24. Also on this day, the carpets inside the residence were approximately 1 year old, were clean, and in good condition.

25. Also on this day, the Jones Road Property had a working furnace, window screens in good condition on the windows, working and undamaged doors and closet doors, window blinds in good condition, and interior walls painted, clean, and free of holes.

26. Neither at the June 17 nor the June 29 meeting did The Denys make any complaint or derogatory statement about the Jones Road Property or its condition.

27. After reviewing the written rental agreement, and filling out the landlord-tenant condition checklist under the column "Condition Moving In," Anderson and The Denys signed the rental agreement, and the condition checklist, at that time.

28. A true and correct copy of the written rental agreement between Anderson and The Denys is attached hereto and fully incorporated herein as Exhibit "2."

29. A true and correct copy of the landlord-tenant condition checklist is attached hereto and fully incorporated herein as Exhibit "3."

30. The landlord-tenant condition checklist attached herein as Exhibit "3," under the column "Condition Moving In," is a true and correct description of the Jones Road Property as it existed on June 29, 2014.

31. The Denys were given keys to the Jones Road Property immediately after the aforementioned paperwork was signed, and they began moving in immediately.

32. On or about August 1, 2014, Anderson received a call from a next-door neighbor of the Jones Road Property, Sarah Edenstrom ("Edenstrom").

33. During this call, Edenstrom complained that a dog was being kept on the Jones Road Property, and the dog had threatened and harassed neighbors, including Edenstrom, numerous times in the past month.

COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT
(Ch. 7 No. 19-40569-BDL) (Adv. Proc. No. _____) Page 4 of 11

34. Anderson had never before received a complaint from Edenstrom.

35. Anderson immediately called Denys, and Denys insisted there was no dog on the Jones Road Property.

36. Anderson relayed Denys response to Edenstrom, and she strongly disputed its accuracy.

37. Edenstrom continued to complain to Anderson in the month of August about the dog on the Jones Road Property and its ongoing threatening behavior.

38. On August 25, 2014, Anderson served The Denys a 10-Day Notice to Comply or Vacate concerning The Denys having a dog on the Jones Road Property in violation of the written rental agreement, as well as The Denys representations upon moving in that they had no pets.

39. When Anderson served the aforementioned 10-Day Notice to the Jones Road Property, Jessica Denys opened the door to receive it, and she was accompanied by a dog inside the house.

40. For the next few months, Edenstrom continued to suspect The Denys were keeping at least one dog on the Jones Road Property, however, she did not have photos to back up her suspicions.

41. On November 20, 2014, while driving to her home, Edenstrom saw a kennel outside on the Jones Road Property, near the house, containing the same dog, and numerous puppies.

42. Edenstrom took photos of this kennel from the street, and provided the photos to Anderson that same day.

43. Upon receiving the photos, Anderson immediately called and spoke with Denys.

44. During this telephone call, Denys apologized to Anderson for lying about having dogs.

45. The Denys refused to vacate the Jones Road Property voluntarily, despite their admittedly keeping dogs on the property.

46. On November 21, 2014, unlawful detainer proceedings were initiated to evict the Denys from the Jones Road Property.

47. The Denys disputed and contested the unlawful detainer proceedings.

48. At the Superior Court hearing on December 8, 2014, Denys was not present, but Jessica Denys and Edenstrom were present and gave live testimony.

49. Jessica Denys testified that the dogs were on the Jones Road Property on the day the photos were taken only to be bathed, and did not actually reside on the property.

50. The Superior Court rejected all of The Denys arguments, and signed a Writ of Restitution. The Denys did not appeal.

51. Anderson did not deposit Denys' December rent check until after the December 8 hearing. When Anderson went to deposit this check, Denys stopped payment on the check, and Anderson was charged a fee by his bank for the returned check.

52. On December 16, 2014, Anderson was permitted to return to the Jones Road Property by the Mason County Sheriff's Office pursuant to a Writ of Restitution.

53. Immediately upon arriving at the Jones Road Property, and entering the house, Anderson discovered extreme damage to the property, far beyond normal wear and tear.

54. The carpets inside the Jones Road Property were ruined by numerous tears, extensive staining, urine, and feces.

55. In fact, in the master bedroom closet, the carpet was removed completely, and air fresheners were glued to the wall.

56. The smell of cigarette smoke was so strong inside the Jones Road Property that the entire residence (walls and ceilings) had to be re-painted to get rid of that smell.

57. Cigarette butts and ashes were found in one of the toilets, not flushed down.

58. There was trash strewn about the house and yard of the Jones Road Property, and it was incredibly dirty inside, particularly in the kitchen and bathrooms.

59. The furnace inside the residence was damaged, its door was taken off and wires were hanging out, the thermostat had been tampered with, and the unit would not shut off.

60. Damage was extreme in other areas, including broken window screens, broken closet doors, broken blinds, large holes in the walls, and dog chewed door jams.

61. The landlord-tenant condition checklist attached herein as Exhibit "3," under the column "Condition Moving Out," is a true and correct description of the Jones Road Property as it existed on December 16, 2014.

62. From June 29, 2014, after they received their keys, to December 15, 2014, only The Denys had access to the Jones Road Property.

63. Upon information and belief, unbeknownst to Anderson, The Denys smoked inside the Jones Road Property, and kept at least one dog on the property, from the very first day they moved in.

64. On December 29, 2014, Anderson mailed Denys and Jessica Denys each a copy of the disposition of their rental deposit, and an itemized list of the damages to the Jones Road Property, including unpaid rent, attorneys' fees, and bank fees incurred by Anderson.

65. After deducting The Denys' deposit and partial last month's rent prepaid, the total amount due was $4,000.31.

66. The Denys refused to pay for the damages.

67. Since Anderson's legal rights were invaded, he was forced to go to state court to seek a legal judgment.

68. On August 7, 2015, the Mason County District Court signed a judgment in favor of Anderson and against The Denys for $4,000.31, plus $14.00 in filing fees, and $89.00 in service fees, for a total judgment of $4,103.31.

69. The Denys continued to refuse to pay Anderson.

70. Anderson filed a transcript of the judgment in Mason County Superior Court on October 12, 2015.

71. Denys filed for relief under Chapter 7 of the Bankruptcy Code on February 28, 2019, in this Court.

COUNT I. 11 U.S.C. § 523(a)(2)(A) — OBTAINING PROPERTY BY FALSE PRETENSE, FALSE REPRESENTATION, OR ACTUAL FRAUD

72. Anderson incorporates the facts of the proceeding paragraphs as they are fully set forth.

73. Section 523(a)(2)(A) of the Bankruptcy Code exempts from discharge debts arising from:

Money property, services or an extension, renewal or refinancing of credit, to the extent obtained by-

A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

74. In the Ninth Circuit, the five elements for a § 523(a)(2)(A) nondischargeability claim are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's

statement or conduct. <u>Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)</u>, 234 F.3d 1081, 1085 (9th Cir. 2000)

75. The plethora of Denys' representations and fraudulent omissions concerning pets and smoking that are more specifically set forth above were false, and Denys knew they were false.

76. As more fully set forth above, Denys intended to deceive Anderson.

77. Anderson relied on Denys' representations and fraudulent omissions, and Anderson's reliance was reasonable.

78. Had Denys been truthful in his representations regarding smoking and pets, Anderson would never have rented the Jones Road Property to The Denys.

79. The Denys obtained the rental of the Jones Road Property by false pretenses, false representations, and/or actual fraud as more fully set forth above.

80. Anderson has been damaged by Denys' representations, and sustained a loss as a result of Denys' representations, omissions, and conduct. Specifically, Anderson has lost $4,000.31 due to the extreme damage done to the Jones Road Property, unpaid rent, attorneys' fees, and bank fees.

81. Anderson is entitled to judgment against Denys determining that the debt of $4,000.31 is not subject to discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

COUNT II. 11 U.S.C. § 523(a)(6) — WILLFUL AND MALICIOUS INJURY

82. Anderson incorporates the facts of the proceeding paragraphs as they are fully set forth.

83. Section 523(a)(6) of the Bankruptcy Code exempts from discharge debts arising from, "willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

84. A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61,118 S. Ct. 974, 140 L. Ed. 2d 90 (1998) (emphasis in original). The Ninth Circuit applies a subjective standard: "§ 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." Carillo v. Su (In re Su), 290 F.3d 1140, 1144 (9th Cir. 2002).

85. This does not mean, however, "that a court must simply take the debtor's word for his state of mind. In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." Id. at 1146 n.6. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." Id. at 1146.

86. "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Barboza, 545 F.3d 702, 706 (9th Cir. 2008). However, maliciousness does not require "personal hatred, spite, or ill-will" In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)

87. As more fully set forth above, Denys' damage to the Jones Road property was willful in that it is characterized by his deliberate intent to injure Anderson. Damages including, but not limited to, the smoking, carpet damage, holes in the walls, furnace damage, and stop-payment check, could only have been done intentionally.

88. Denys' damage to the Jones Road Property was also malicious. Denys intentionally committed wrongful acts by deliberately lying to Anderson about smoking and pets, deliberately damaging Anderson's property, and deliberately stopping payment on the

December rent check to retaliate against Anderson for being evicted. Denys has no just cause or excuse for his conduct.

89. In causing such extreme damage to the Jones Road Property, and allowing his dog to threaten and harass neighboring property owners, Denys displayed a conscious disregard to the property of Anderson, invaded Anderson's legal rights, and injured Anderson in a substantial and significant way.

## V. AMENDMENTS

90. Anderson reserves the right to amend or supplement this Complaint as appropriate based on additional information or other circumstances affecting the bankruptcy.

## VI. RELIEF REQUESTED

Anderson respectfully requests that the Court grant the following relief:

A. An order determining that the sum of $4,000.31 is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6), and a judgment in favor of Anderson and against Denys for the same;

B. An award of costs and reasonable attorneys' fees related to the pursuit of this action to the extent available and authorized by law; and

C. Such further relief as this Court deems just and equitable, including, should the Court deem appropriate, a denial of discharge based on abuse, misuse, or bad faith in relation to the bankruptcy proceedings.

Dated this 24th day of May, 2019.

By _Bryan Anderson_
Bryan Anderson
Plaintiff–Creditor

EXHIBIT "1" TO

COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT

Ch. 7 No. 19-40569-BDL

Adv. Proc. No. _____



# APPLICATION TO RENT

**(All rights reserved for Washington Landlord Association members only)**

$ _15_ **PER ADULT**
(Screening Charge)

*[handwritten top right: 6-19-11 ... = accept ...]*

Property Address: **1784 Jones Rd. Shelton**    Rent $ **695.00**

Landlord: **Bryan Anderson**    Phone: **253-537-9215** Access Code: **5532**

---

**(A separate application form is required for each applicant 18 or older. PLEASE PRINT CLEARLY)**

*[left margin handwritten: Depos- Seven-... rent = Sore rent or tend = Sore]*

Full Name **David** **John** **Denys**   Phone **(360)426·0476** Birth (m/d/y) ~~███~~
       First     Middle     Last

Physical Address **328 Park St apt #203** City **Shelton** State **WA** Zip **98584**

Names of all 18 or older to be renting with you **Jessie A. Denys**

Children (names/ages) ~~█~~ **( )** ~~H~~ **( )**   Pets/animals(list) **N/A**

List all vehicles, boats, RV's, etc. **92 Honda Civic 2005 Acura TL** Firearms(list) **N/A**

Driver's Lic No ~~██~~   Soc Sec No ~~██~~   Smoker? **NO**

Employer **Tempurstaly** How long? **1yr** Ph **360 2581241** Job **foundation** Hrs/wk **40+** Pay **15.00 HR**
*[handwritten: (Carol) (Mr. Baker) (503-288-8100) ...]*

Prior Employer: **XeDYX** How long? **1yr** City **Lacey** Job **call rep** Pay **9.19 HR**
*[handwritten margin: 7/13, 26... Wille the ... used...]*

Other Verifiable Income Sources **N/A**   Monthly Amts $ **2400**

Parents (1) **Kim Denys** Address **Idaho** Phone _____

(2) _____ Address _____ Phone _____

Landlord: Name **Carla Underwood** City **Shelton** Phone **214·480·1151** Months ___ Unit # **203** Rent **775**

Prior LL: Name **Gateway** City **Shelton** Phone **360 426 5988** Months ___ Unit # **1** Rent **650**

Banking with (name) **O.C.Union** Credit/Charge Cards (names): _____

Major Loans **N/A**   Ever filed for bankruptcy? **NO** When? _____

Personal Reference (1) **Raheim Jacobs** Phone **360 292 8896** Relationship **friend**

(2) **Jeff Banks** Phone **360 401 5801** Relationship **friend**

**OTHER:** Are you a Section 8 renter? (y/n) **N**   Medical marijuana user? (y/n) **N**   Have a service animal? (y/n) **N**

If required, would you restrict smoking to outside? _____ How long do you plan to stay here? **years** Preferred move-in

date? **07/01/14** When have the required deposit? **yes** When have the initial rent payment? **yes** Could you pay both

first and last month's rent?(y/n) **yes** Would you local credit-worthy person co-sign?(y/n) ____ Seen inside unit?(y/n) ____

Why moving? **Landlord Raised Rent**   Are you a victim of violence? (optional y/n) **NO**

Have you ever been evicted or given notice to move (explain)? **NO** **N/A**

List all felony/misdemeanor convictions: **N/A**

**BY SIGNING I approve review of my consumer/credit report, making of reference checks, and verification of all information hereto.**

*(Note: Please complete in full; unanswered, incomplete, or false items may be cause for disqualification or termination.)*

SIGNATURE: **David Denys** (Date) **06/17/14** (Email) **xxmudvaynebudxx@aol.com**

*(Please submit completed application with fee as directed by landlord or manager to avoid disqualification)*

Per RCW 59.18.257, your screening will entail public and business record reviews and consultations to include any of the following: criminal, eviction, bankruptcy, public records, credit, landlord conditions, and all reference resources. The applicant with the most favorable overall rating will be given first consideration. Applicant may dispute accuracy of consumer reports. If not posted, applicant may ask landlord for name/address/phone of screening resources (for screening report copy). Per RCW 49.60.040(24), a defined service animal is one "trained" to assist or accommodate a person's sensory, mental, physical disability. Letter documenting need for service animal, medical marijuana, or accommodation may be required from a doctor or qualified professional. Applicant acquires no rights to any rental unit until an approved lease or monthly rental agreement covering the applicant is signed by all affected parties.

**WLA 50**

*[bottom handwritten: Pd 30.00 fee / Pd 250. dep (cash) 6-21-14]*



# APPLICATION TO RENT

(All rights reserved for Washington Landlord Association members only)

$ __15__ PER ADULT
(Screening Charge)

Property Address: __1784 Jones Rd. Shelton__   Rent $ __695__

Landlord: __Bryan Anderson__   Phone: __253-537-9215__ Access Code: __5532__

---

*(A separate application form is required for each applicant 18 or older. PLEASE PRINT CLEARLY)*

Full Name __Jessie__ __Ann__ __Denys__   Phone __(360)426-047(__ Birth (m/d/y) ▓▓▓
　　　　　First　　　　Middle　　　　Last

Physical Address __328 Park St apt 203__   City __Shelton__   State __WA__ Zip __98584__

Names of all 18 or older to be renting with you __David J. Denys__

Children (names/ages) L▓▓▓ D▓▓( ) H▓▓ Pets/animals(list) ( ) __N/A__

List all vehicles, boats, RV's, etc. __92 honda civic   05 Acura TL__   Firearms(list) __N/A__

Driver's Lic No ▓▓▓   Soc Sec No ▓▓▓   Smoker? __NO__

Employer __Home maker__ How long? __3 yrs__ Ph___ Job___ Hrs/wk___ Pay___

Prior Employer: __Alpine Way Retirement home__ How long? __3 yr__ City __Shelton__ Job __CNA__ Pay __11.50 HR__

Other Verifiable Income Sources ___ Monthly Amts $___

Parents (1) __Lennie Bentley__ Address___ Phone __(360)463-1780__

　　　(2) __Diana Mcnamara__ Address __WI__ Phone __(608)519-2806__

Landlord: Name __Carla Underwood__ City __Shelton__ Phone___ Months __1½ YR__ Unit #___ Rent __775__

Prior LL: Name __Gateway Property mngmt__ City __Shelton__ Phone___ Months __3 yrs__ Unit #___ Rent __650__

Banking with (name) __O.C.C union__ Credit/Charge Cards (names):___

Major Loans __N/A__   Ever filed for bankruptcy? __NO__ When?___

Personal Reference (1) __Billie Jean Phipps__ Phone __(360)490-8412__ Relationship __Friends__

　　　(2) __Lennie Bentley__ Phone __360 463 1780__ Relationship __father__

**OTHER:** Are you a Section 8 renter? (y/n) __N__  Medical marijuana user? (y/n) __N__  Have a service animal? (y/n) __N__

If required, would you restrict smoking to outside? ___ How long do you plan to stay here? ___ Preferred move-in
date? __07/01/14__ When have the required deposit? __yes__ When have the initial rent payment? __yes__ Could you pay both
first and last month's rent?(y/n) __Y__ Would a local credit-worthy person co-sign?(y/n)___ Seen inside unit?(y/n)___

Why moving? __New Landlord Raised Rent from 775 to 940__ Are you a victim of violence? (optional y/n) __N__

Have you ever been evicted or given notice to move (explain)? __NO__

List all felony/misdemeanor convictions: __N/A__

BY SIGNING I approve review of my consumer/credit report, making of reference checks, and verification of all information hereto.
*(Note: Please complete in full; unanswered, incomplete, or false items may be cause for disqualification or termination.)*

SIGNATURE: __Jessie Denys__ (Date) __06/17/14__ (Email) __Jessie.denys44@gmail.com__
　　　　*(Please submit completed application with fee as directed by landlord or manager to avoid disqualification.)*

Per RCW 59.18.257, your screening will entail public and business record reviews and consultations to include any of the following: criminal, eviction, bankruptcy, public records, credit, landlord
conditions, and all reference resources. The applicant with the most favorable overall rating will be given first consideration. Applicant may dispute accuracy of consumer reports. If not posted, applicant
may ask landlord for name/address/phone of screening resources (for screening report copy). Per RCW 49.50.040(24), a defined service animal is one "trained" to assist or accommodate a person's
sensory, mental, physical disability. *Letter documenting need for service animal, medical marijuana, or accommodation may be required from a doctor or qualified professional.*
Applicant acquires no rights to any rental unit until an approved lease or monthly rental agreement covering the applicant is signed by all affected parties.

WLA 50

EXHIBIT "2" TO

COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT

Ch. 7 No. 19-40569-BDL

Adv. Proc. No. _____

*Landlord Copy*

# RESIDENTIAL LEASE AGREEMENT

*Copyright by Washington Landlord Association. All rights reserved for association members only.*

Date June 29, 2014

1. **TENANT HEREBY LEASES** premises at 1784 SE Jones Rd.

Shelton _____ WA 98584 _____ Unit _____

2. **TENANT SHALL LEASE** said premises for calendar period beginning July 1, 2014 ____, ending June 1, 2015 _____
In the event landlord or tenant does not elect to terminate this lease at the ending date therein (with 30-day advanced written notice), all applicable terms of this agreement shall revert to a month-to-month basis.

3. **OCCUPANCY SHALL BE LIMITED** jointly and severally to the following persons (adults and children). *Note: Landlord or agent must approve sublet of premises, or over-night visitors staying more than 7 consecutive or 14 total days.*
   David John Denys; Jessie Ann Denys; L▇▇▇ D▇▇, H▇▇▇ D▇▇

   Provision for pets/animals: Not Allowed _____ smoking: Not Allowed _____ no. vehicles: 2 ___ RV/boats: None

4. **TENANT TO PAY** a monthly rent of $ 695.00 _____ per month *by the first day* of each month (or monthly rental period) to the
   landlord or agent beginning on (date) July 1, 2014 _____; pay $ N/A _____ any pro-rata rent for the period
   N/A _____ through N/A _____; and pay $ 100.00 per month  (*Start Extra Aug 2014* towards last month's rent.)

   Additional parking or other monthly fees, if any: $ N/A _____ to cover N/A _____

5. **UTILITIES** paid by landlord (checked): _____ cable TV, _____ electric, _____ gas, _____ water, _____ sewer, _____ garbage,
   _____ (other) _____. *Tenant must pay all other utilities; tenant failure to promptly call in may result in a $35 charge.*

6. **TENANT TO PAY** a security fee of $ 695.00 _____ of which $ N/A _____ shall be nonrefundable to cover:
   N/A _____. After additional deductions for cleaning and repairs necessary to restore the premises to its original condition (less allowance for reasonable wear and tear), along with deductions for any rent due over the remaining term of the lease (including rent loss during periods of lease or restoration), late fee, caused inspection/eviction, utility, notice, legal and any breach of contract costs, the balance of the security fee shall be refunded, **PROVIDED:**

   (a)  Said premises are kept picked up and neat following notice of vacancy (for showing to prospective tenants);
   (b)  Tenants agree and cooperate to the showing of the premises to prospective tenants at reasonable times;
   (c)  No evidence of non-approved pets (odors, stains, droppings, fleas); no unauthorized smoking, painting or remodeling;
   (d)  Lawn is mowed, all grounds are cleared (as applicable); all waste is hauled away; all occupants and belongings are removed;
   (e)  Landlord or agent was notified per Item 10 below; or landlord/agent agreed with tenant to an exception; and
   (f)  X ___ door, _____ laundry, _____ garage door, and X ___ mail box keys are returned to landlord or agent (plus any copies). Any refundable pre-paid rent shall first apply to final balances due landlord not covered by security fee. Refund checks void if not cashed or deposited within 90 days. *For tenant-responsible damages or neglect during tenancy, costs may be deducted anytime from the security fee following 10-day written notice to cure, with 30-day deadline for tenant to replenish fee.*

7. **TENANT AGREES AND UNDERSTANDS** that any of said security fee *may not* be applied by the tenant *toward rent* at any time. *Any security fee refund or shortage,* as per itemized statement (or estimate), shall be processed *between* 2 and 14 days following rental agreement termination and vacation of premises. The security fee shall be held in trust per RCW 59.18.270.

8. **DELIVERY OF RENT:** *All* due on the *first day of each monthly period,* it is absolutely the responsibility of the *tenant* to mail/deliver rent payment (cash, check, money order/cashier check, direct deposit, etc., at landlord/agent option) to the following address or location: Bryan Anderson, 525 Broadway #403, Tacoma, WA 98402 ___ Landlord/agent will not be responsible for any lost or missing cash payments *not personally handed to landlord/agent.* If by start date, tenant fails to call/show up, get keys, and pay all move-in money due, landlord/agent may immediately terminate agreement with no refunds.

9. **LATE/NSF/DEFAULT RENT:** *Any* rent due *not paid by the 4th* day of the monthly rental period is subject to a *$40.00 late fee* charge with an additional *$10.00* for each late day thereafter, *including late fee billing and eviction notice.* Late fees assessed concurrent with rent due shall be considered rent as due. *NSF checks* shall be assessed $30.00 each. If *tenant defaults* in rent payment, is absent from the premises without notice, and there is reason to believe tenant is terminating occupancy, the premises will be *considered abandoned,* entitling landlord or agent to post notice, *take immediate possession,* change of locks, and store any items.

10. **NOTICES:** Tenant notice *prior to ending date* (item 2) requires approval of all signing parties except as below. Notice to vacate *at*

*ending date* requires 30-day advance *written notice* by either landlord or tenant. Notice subsequent to ending date requires 20-day advanced *written notice* by either landlord or tenant effective the last day of any subsequent month. Tenant shall, at the expiration of either or all notices, surrender the premises and keys to the landlord/agent in accordance with this agreement. *Armed Forces:* Members & families may terminate without penalties following reassignment/deployment per RCW 59.18.220. *Disabled/Victim:* May terminate any time to accommodate a documented changing disability/safety need. *Other:* Following 30-day written notice by tenant/representative, lease may be terminated upon a verified tenant death, incarceration, or employer-required transfer out of commuting range. *Maintenance/Showing:* Following proper landlord/agent notice, tenant shall allow access to unit at reasonable times. Tenant failure to so honor access is cause to assess tenant any service cancellation costs, and $100 per RCW 59.18.150(5). *Changing Premises:* If tenant relocates to another unit of the landlord, a relocation fee may be charged in addition to any cleaning or damage charges against the previous unit. Security fees and credit for rent shall transfer to the new unit.

11. **SIGNS/ACCESS:** Landlord/agent may enter yard and place/maintain business signs (e.g. rent, lease, sale) and postings on the premises as deemed necessary for business operations. Additionally, landlord or agent may enter the tenant's premises for purposes of: (1) inspection; (2) cleaning, repairs or alterations; (3) other services; or (4) showing premises; *provided*, access is at reasonable times with proper notice (*no notice* required for emergency, end/term, or abandonment). Tenant notice to vacate, or request for service or repairs, shall constitute tenant-approved notice of respective access by landlord or agent (in absence of other arrangements).

12. **PUBLIC SAFETY:** Dwelling is equipped with ___hard-wired and/or X battery-operated smoke/heat detectors, and X ___CO alarms in working order. Tenant is responsible to maintain the devices in working order; tenant failure to comply includes a $200 fine per RCW 43.44.110(4). *If any device is later found inoperable, landlord may charge tenant a $50 compliance fee/each.* If duplex, multiplex or apartment: the building has a sprinkler system ___yes ___no; a fire alarm system ___yes ___no. Unless attached or noted, the building does not have a smoking policy, nor an emergency notification, relocation or evacuation plan for occupants. The premises may include individuals that have or will commit criminal acts; *report* all suspicious activities to police. Tenant *will not* knowingly/freely give unit keys to outsiders, nor allow entry of any felon, law violator or repeat abuser without landlord written approval. *Intentional and malicious property damage, impair, removal or deface by tenant is a criminal offense under 9A.52 RCW.*

13. **CHANGE TERM OR RENT:** Requires written approval of all affected parties anytime, *or* **30 days** written notice by landlord/agent only *at or after lease ending date.* All other provisions shall remain intact.

14. **INSURANCE/REPAIRS:** Tenants should obtain insurance on their personal property to include theft, vandalism, pests, accident, storm, cold or heat, mold, flood, water, and electrical damages, as a minimum. *(Landlord/agent not responsible for damaged/missing tenant property.)* Landlord/agent will promptly respond to tenant written requested repairs, but will not be monetarily responsible for: (1) tenant disruptions or inconveniences during habitable periods of repair, drying, scheduling or bidding of same; (2) tenant/guest injuries incurred in or around obvious areas of maintenance, repair, or construction; nor (3) housing or other costs incurred by tenant during good-faith periods of landlord repairs or other activities.

15. **ATTORNEY/COLLECTION/SERVICE FEES:** Tenant agrees to pay all landlord/agent charges including 12% annual interest on delinquent accounts, and all reasonable attorney/collection fees necessary for any action arising out of a tenant default or breach.

16. **PREMISES USE:** Tenant shall not use said or neighboring premises for any illegal purpose, or for any other purpose than that of a residence. No excessive traffic or visitors (e.g. more than 3-4 drive-ups or walk-ins per day) without landlord/agent approval. Tenant shall not allow entry of anyone in violation of court protection orders. Tenant to conform to all covenants, codes, statutes, ordinances; and landlord/agent rules regarding occupancy. *Absolutely no unlawful drugs, excessive drinking, public disturbances, verbal abuse, spiteful threats, or unauthorized pets/firearms/smoking on premises. Violations are cause for eviction.*

17. **OPERATION, MAINTENANCE, STORAGE, ALTERATIONS TO PREMISES:** On a *continuing* basis, tenant agrees to:
    (a) *Keep premises* in a clean, neat, and sanitary condition; *no parking*, storage or accumulation of debris on lawn or yard;
    (b) *Dispose of* all rubbish, garbage, and waste in a clean and sanitary manner--at reasonable intervals--and assume all costs of extermination and fumigation for infestation caused by tenant; not feed straying pets or animals; not temporarily host pets;
    (c) *Properly ventilate and operate* all electrical, gas, heating, plumbing, septic, facilities, fixtures, doors, windows, locks, and appliances; *No* portable kerosene/gas/incense burning; *keep* hot water tank at 120 degree maximum; *limit* candle burning; no excessive odorous chemicals/sprays/vapors; *restrict* toilets to biological waste and tissue paper; keep drains clear;
    (d) *No BBQs* or open fires in units or under eaves, canopies, balcony over-heads, or under building structures or covers; *(Note: Carbon monoxide (CO) is a very poisonous combustion gas that cannot be seen or smelled, and can afflict or kill!)*
    (e) *Pay for, replace or repair* in a *landlord-approved* manner, all items (including doors, windows, locks, smoke/heat/CO alarms) damaged or made inoperable during occupancy; *correct or repair* plumbing and fixtures clogged or broken by misuse or neglect; and where applicable, *use due precaution* against freezing or stoppage of water pipes in and around the premises;
    (f) *Report all* plumbing/roof/ water leaks, *and* all mold, code and other hazardous conditions to landlord/agent within 48 hours to avoid charges for inspections, presumptive damages, and increased utility fees *caused by* lack of timely reporting *to landlord;*
    (g) *Not deface, damage, impair, or remove* any property, facilities, equipment, and appliances; *not install* TV/radio antennas, decorations, signs, or postings, nor other equipment without landlord/agent approval except as authorized under FCC regulations. For any installations, landlord/agent may assess an added refundable $250 security fee to cover any removal costs;

(h) *Not grow* medically-approved or other marijuana in or around the premises; *Limit supply* for own medical purposes per RCW 69.51A.040; *Not smoke/vaporize* same anywhere inside premises, nor in any unauthorized outside areas.

(i) *Not make unauthorized alterations*, climb ladders/roofs, paint/wallpaper, change fixtures/locks, or run dangerous equipment;

(j) *Not store non-operating vehicles*, nor boats, RV's, motor cycles, trailers, firearms, equipment, tools, hazardous materials, liquids, paints, fuels/oils, chemicals, waste or non-using items *on premises* without landlord/agent approval; no waterbeds;

(k) *Maintain reasonable peace and quiet* with other tenants/neighbors and *pay* for any caused damages therein; No disturbing TV's, sound systems, musical instruments, or other disturbing activities; No fireworks of any kind.

18. **MOLD/LEAD PAINT:** _X_ Copy of State-approved mold information hand-out is provided, or ___posted on the premises per RCW 59.18.060(12). For pre-1978 housing, _N/A_ a federal-approved pamphlet on lead poison prevention is also provided.
*BEWARE:* Touching, breathing or eating lead paint chips/construction dust can be hazardous to people...*especially children!*

19. **YARD/OUTSIDE PREMISES:** Where applicable (y/n)_Yes_____, tenant agrees to mow, water, weed, and maintain grounds in good condition (subject to any landlord specifics); and to keep own driveways, walks, porches, and garages clean and clear of obstructions, and pay costs of any used utility. Failure to comply following notice will result in charges to tenant for necessary remedy. Landlord/agent may reasonably enter yard/buildings without notice to service common areas and outside yard/structures. No trampolines, swimming pools, swing or climbing sets, or other such *"attractive nuisances"* without written approval of landlord/agent. *Unauthorized parking, storage, or accumulation of waste may be assessed up to $10.00 per day per violation.*

20. **FURNISHINGS PROVIDED:** Included are stove, refrigerator, drapes, shades, smoke/CO alarms, and cable boxes in place upon move-in, and also the following: please see checklist

21. **MOVE-IN CONDITION REPORT:** The landlord/manager and tenant each state they have inspected the premises to be rented, including the walls, floors, countertops, carpets, drapes, applicable furniture, and appliances in each room; and all windows, doors, locks, smoke/CO alarms, electrical features, faucets and plumbing fixtures, etc. *Subject to any defects reported below (#23) or within 30 days (#22),* all items in the premises were inspected and initially found clean, undamaged, and in good working order.

22. **CONDITION REPORT UP-DATE:** *Tenant to complete and return any/all condition report up-dates by 30 days of move-in.*

23. **OTHER/ADDENDUM:**_____

*Parking Assignment:* _____*Carpets -Special Note:*_____
*Landlord/agent not liable for any violations/repairs not first reported in writing by tenant to landlord/agent in a timely manner. Tenant is responsible and liable for all adverse activities and consequences of all occupants, guests, and known intruders.*

24. **DELIVERY OF POSSESSION:** If for any reason landlord or agent fails to deliver possession of these premises at the start of this lease, rent shall be abated until tenant possession. All other aspects of this lease shall remain in full force. In no event shall landlord or agent be liable for damages caused by failure to deliver possession of the premises. If possession is not given tenant within 7 days of the start date, tenant may terminate this lease with full refund by giving written notice.

25. **EVICTION PURSUANT TO WRIT OF RESTITUTION:** Tenant(s) HEREBY OBJECTS to the storage of their personal property. Tenant(s) understand this will result in their property being placed on the nearest public right-of-way.

26. **RECEIPT OF MONEY PAID:** Tenant has paid $_____in_____for security fee; and

paid $_____in_____for rent covering period _____through_____.

In addition:_____

27. **IN WITNESS,** tenant(s) and landlord/agent have reviewed this rental lease as completed, and hereby finds it severable and reasonable, and agrees to same as provided or modified per RCW 59.18 (Washington State Landlord-Tenant Law).

_Jessie Deney_ _____ _____ _____
(Landlord/Manager Sign)                     (All Occupants 18 or Older Sign)

_Bryan Anderson_ _____ Bryan Anderson, 525 Broadway #403, Tacoma   WA 98402 253-590-3301
(Landlord/Manager Sign)          (Landlord/Manager Address)                (Landlord/Manager Phone)

28. **CO-SIGNER AGREEMENT** (optional): Co-signer agrees to assure, guarantee, and not contest performance of this lease, and to pay a $_____performance fee (refundable less any remaining amounts due not covered by the security fee).

(Signature)_____ (Printed Name)_____ (SSN)_____

(Phone)_____ (Address)_____ (City, State, Zip)_____

3/13  6-29-14   695.00  1st
                695.00 - dep
               _____
               1390.00
               -250.00
               # 1140.00

Page 3 of 3   1st cost  1040.
check         100.
              $ 1140.       6/29/14                                    WLA 57

EXHIBIT "3" TO

COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT

Ch. 7 No. 19-40569-BDL

Adv. Proc. No. _____

# LANDLORD TENANT CHECKLIST (Option A)

This checklist is for record only and does **not** obligate the landlord/manager to make specified repairs.

Property Address _1784_

Landlord/Manager _Bryan Anderson_          Date _6-29-14_
_Coralyn Anderson_

## Living/Dining Room/Hallways

| Item | Condition Moving In | Condition Moving Out |
|---|---|---|
| Paint/ Caulking | Painted | Spots/crayons, black marking pen, + 3 large holes in wall + smoking |
| Walls/Ceilings | painted | Spots & stains on walls + smell of smoke |
| Carpet/Floors | Cleaned – Stain remove | Pet urine/etc on all carpeting, incl'd closet – carpet pad removed |
| Windows/Doors | Cleaned – good | cigarette burns. TERRIBLE SMELL + spots, Door jambs – chewed + damage by dogs |
| Drapes/Blinds | blinds (2) new 2 listings (good) | (4) BROKEN   (3 doors) trim molding missing |
| Light Fixtures | Good | all dirty |
| Outlets/Fans | good | dirty |
| Fireplace | Ø | Ø |
| AC/Heating | Good – Electric | Furnace completely disanantled in pieces on floor + thermostat hanging broken |
| Smoke/CO Alarms | Good | on |

## Kitchen/Utility/Other _____

| Item | Condition Moving In | Condition Moving Out |
|---|---|---|
| Refrigerator | Cleaned | Very dirty |
| Stove/Oven | Cleaned | Very dirty |
| Washer/Dryer | Ø | Tenant Removed Washer + dryer provided |
| Cabinets | cleaned | Very dirty w/ black marker |
| Paint/Caulking | good | Very dirty w/ Color crayons + spots |
| Ceiling/Fans | good | on |
| Microwave | Ø | Ø |
| Windows/Doors | Good | |
| Light Fixtures | Good | ok |
| Stove Vent Fan | good | ok |
| Sink/Drain | good | ok |
| Disposal/Dishwasher | Dishwasher – good | Garbage disposal – Missing stopper |
| Counter Surfaces | good | Damaged – edges chipped out |
| Floors/Tile | Kitchen – new | ok |
| Dryer Vent | good | ok |
| | | Garbage bags full of garbage – large |

## Bedroom(s)/Recreation Room/Other _____

| Item | Condition Moving In | Condition Moving Out |
|------|---------------------|----------------------|
| Paint/ Caulking | Good | Spots + black marking pen walls - Very Dirty |
| Ceiling/Walls | Good | Very Dirty - + Soiled - MARKS TERRIBLE STAINS + SMELL |
| Carpet/Floors | Cleaned - Stain Removed | let urine + etc of dogs - Completely Ruined |
| Windows/Doors | Good | Glass Closet Doors - removed |
| Curtains/Blinds | new | 2 Broken Blinds / 3 Screens Bent + Broken ) |
| Light Fixtures | Good | ok |
| Outlets | Good | ok |
| Closets | Good | Closet Doors Removed - All Glass |
| Air Conditioner | No | No |
| Smoke/CO Alarms | Good | ok |
| Heating | Electric | Furnace Dismantled = |

WALK-IN Closet - Master Bed-
CARPET + PAD Completely Removed
W/DOOR TRIM CHEWED

## Bathroom(s) Master

| Item | Condition Moving In | Condition Moving Out |
|------|---------------------|----------------------|
| Toilet | Good | Toilet Seat Broken / Very Dirty |
| Faucets/Shower/Tub | faucet - not working | ok |
| Cabinets | Good | Dirty |
| Paint/Caulking | Good | Stains + dirt |
| Walls/Ceiling | Good | Stains + dirty w Crayon Marks |
| Floors/Tile | Good | Dirty |
| Windows/Covers | Good - | Screen Missing / Dirty |
| Light Fixtures/Heating | Good | ok - Dirty |
| Outlets/Fans | Good | ok - Dirty |
| Sink & Tub Drains | Good | ok - Dirty |
| Counter Surfaces | Good | ok - Dirty |
| Tub/Shower Surfaces | Good | Shower Curtain Rod - Missing Towel Bar - Missing |

**Other Comments:** (unusual odors, mold, leaking, condition of outside/yard, etc.)

MOVE IN:

X Bryan Anderson    6-29-14
Landlord (sign/date @ move-in)

X _____    6/29/14
Tenant (sign/date @ move-in)    6/29/14

MOVE OUT:

Bryan Anderson    12-16-14
Landlord (sign/date move-out)

_____
At Landlord Option - Tenant (sign/date move-out)